# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

OCT 08 2015

MATTHEW J. DYKMAN
CLERK

15 mr 631

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>County Road 120, House 113, Espanola, NM 87532 as<br>further described in Attachment A | )<br>)<br>)    Case No.<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A Attached hereto and incorporated herein

located in the _____ District of _____ New Mexico _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, Attached hereto and incorporated herein

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 641 | Theft of Government Property |

The application is based on these facts:
See affidavit attached hereto and incorporated herein.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Joseph R. Davila, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/8/15

*Judge's signature*

City and state: Albuquerque, NM

Steven C. Yarbrough
*Printed name and title*
U.S. Magistrate Judge

**Affidavit for Search Warrant**

I, Joseph R. Davila, being duly sworn, depose and state as follows:

INTRODUCTION

1. I am employed as a Special Agent with the United States Department of Energy, (Department), Office of Inspector General, (OIG), Office of Investigations, (OI) in Albuquerque, New Mexico, and have been so employed since February 2005. The Department/OIG/OI is a federal agency responsible for conducting criminal investigations involving fraud waste and abuse within the Department, its contractors and subcontractors. I am currently a sworn federal law enforcement officer. From July 1997 until February 2005, I was a Federal Law Enforcement Officer with United States Customs and Border Protection Service. During my career as a law enforcement officer, I have participated in and conducted investigations into federal crimes. I have completed the Criminal Investigator Training Program, the Inspector General Investigator Training Program and the U.S. Customs Inspector Basic Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. I have a Bachelor of Science degree in Administration of Justice from Western New Mexico University.

2. I make this affidavit in support of an application by the United States of America for the issuance of a search warrant to search property from the premises located at County Road (CR) 120, House 113, Espanola, New Mexico 87532 which includes a multilevel house and a single story gray structure with two windows located in the front of the house. The property to be searched is more fully set forth in Attachment A incorporated herein by reference.

CRIMINAL VIOLATIONS

3. As set forth in more detail below, there is probable cause to believe that Title 18 U.S.C. § 641: Theft of Government Property, has been violated and evidence of this violation exists at the premises described in Attachment A incorporated herein by reference.

SOURCES OF INFORMATION RELATED IN THIS AFFIDAVIT

4. I make this affidavit based on personal knowledge and upon information furnished to me by witness testimony, including Los Alamos National Laboratory employees, local law enforcement officers and other sources.

Since this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a search warrant(s), I do not include all information known to me.

### DETAILS OF INVESTIGATION

5. The Los Alamos National Laboratory (Laboratory) is a national security science research laboratory located in Los Alamos, New Mexico. The Laboratory assesses the nuclear weapons stockpile of the United States of America for safety, security, and reliability, while maintaining the stockpile through life extension, alternative design, pit manufacturing, and system surveillance. The Laboratory also uses its scientific, research and technological capabilities to anticipate potential national security threats and to attempt to enhance overall global security while undertaking its national security mission.

6. The Department of Energy (Department) owns the Laboratory, its grounds, facilities, and all equipment used at the Laboratory. Examples of this equipment include but are not limited to, desktop and laptop computers, printers, monitors, telephones, desks, files, buildings, specialized scientific electronic equipment, vehicles, tools, and protective equipment. An independent corporation, Los Alamos National Security (LANS), runs, manages and administers daily Laboratory operations on behalf of the Department, based upon a prime contract with the Department. The Department fully pays for, through the prime contract with LANS, any and all expenses that the Laboratory incurs for its day-to-day operational and equipment needs, to include the purchase of computers and related electronic equipment.

7. The Laboratory uses a marking system for some items, tools, and equipment consisting of U.S. Government property stickers, Laboratory stickers and/or black light markers.

8. Technical Area (TA) 54 is a waste management facility located within the Laboratory. The goal of TA-54 is to ensure that residual contaminants from past Laboratory operations do not threaten human or environmental health and safety. To achieve this goal, the Laboratory investigates, as necessary, the remediation of sites contaminated by past Laboratory operations. TA-54 maintains the contaminated material until shipment offsite.

9. Within TA-54 is a location known as Area G. Area G is a location where contaminated material is stored until it is transported to an offsite location.

In addition to the storage of contaminated material, Area G is also used to reduce the size of large scale items into manageable pieces for proper disposal. Various tools including band saws, dolly/casters, and other hand tools are used during daily operations in Area G. When these tools are used on contaminated items, they themselves become contaminated and are not allowed to be removed from Area G.

10. Throughout TA-54 and especially in Area G there are clearly marked warning signs which read "Caution Radiation Area", "Danger Hazardous Waste Storage Area, Unauthorized Persons Keep Out", as well as other signage. In addition, when exiting Area G, there are signs which read "You Are Leaving A Controlled Area, Exit Requirement: Contact Health Physics, Remove PPE, Monitor Tools and Equipment, and Monitor Hands and Feet".

11. RICHARD ATENCIO was employed by Compa Industries as a Nitrate Salts Inspector (Inspector). Compa Industries is a sub-contractor to LANS at the Laboratory. As an inspector, ATENCIO was responsible for conducting hourly inspections of waste drums stored within TA-54's Area G, to ensure internal temperatures remained within a specified range. In this capacity, ATENCIO had unfettered access TA-54 and Area G.

12. In order to work in TA-54, ATENCIO was required to successfully complete various training which included Hazardous Waste Operations Training, Tritium Safety Training, Radiation Worker Training I and II, Waste Disposition Critical Safety Fundamentals, TA-54 Site Specific Training, as well as other training involving hazardous materials. As a result of his successful completion of this training, he was trained in the protocols and implications of removing items from TA-54's Area G.

13. On September 30, 2015, the Laboratory's Investigative Services Team (LIST) contacted the Department, OIG with information that ATENCIO took several items from TA-54. The LIST informed the Department OIG that the Los Alamos Police Department (LAPD) was investigating the incident.

14. On September 30, 2015, the Department OIG contacted the LAPD for further information related to their investigation. LAPD relayed to the OIG that on September 29, 2015 Corporal Jack Casias, LAPD, responded to a larceny call at TA-18. TA-18 is a technical area similar to TA-54. TA-18 is located to the south of TA-54, across the canyon approximately 700 yards. Prior to arriving at the crime scene, Corporal Casias stated he was informed that a witness saw a male subject dressed in a brown shirt

throwing items from the trunk of his vehicle into the bushes on the road to TA-18. The witness did not see the color of the vehicle but did state that it was a car.

15. Upon arrival at the scene, Corporal Casias saw several items in the bushes along the side the road to TA-18. The items consisted of:

    - 1 Blue tow strap
    - 1 garden hose light duty (Green)
    - 2 duffle bags Everest Dark Blue (1 included the name J. Lopez)
    - 1 Green Laundry bag (marked TA-54-412)
    - 1 Vehicle Trunk mat
    - 1 Band saw labeled Unitec Model 5 6079 0020 wide mouth no. 13014
    - 2 hexarmor gloves
    - 2 rolls of cargo pit tape (1 – 2" and 1 - 4")
    - 1 roll of yellow fiber tape
    - 1 Toolwell hydraulic dolly/caster with serial # 121210185
    - 1 box of 15 count rigid conduit 2"
    - 2 sponges
    - 1 bottle Emerel multi-purpose cleaner
    - 1 roll yellow fiber tape
    - 1 pair of mechanics gloves
    - 7 pairs Truefit gloves
    - 1 trimmer head for portable weed trimmer
    - 1 sub pump
    - 1 tie down
    - 1 screwdriver tool set
    - 1 orange mallet
    - 1 clamp
    - 1 pair max flex gloves
    - 1 carpet used to cover the spare tire in the trunk of a vehicle

    The cost of the items found at the crime scene are collectively valued over $1,000.

16. As Corporal Casias was conducting an inventory of the items found, one of the items, a band saw was lying on a bag with writing on it which read TA-54. At that point, Corporal Casias suspected the items at the scene may be contaminated based on his knowledge of TA-54 operations. Corporal Casias immediately notified the Laboratory's Emergency Management and

Radioactive Control Technicians (RCT), so items at the crime scene could be surveyed for possible contamination.

17. The RCT surveyed the items and determined that the band saw, a pair of gloves with the initials WS and the bag under the band saw were contaminated with alpha emitting isotopes. The RCT then surveyed all individuals who were at the crime scene for contamination. Two of the individuals were found positive for contamination. Both were taken to the Laboratory Occupational Health Clinic for decontamination.

18. Corporal Casias conducted an interview with the witness at a location away from the crime scene. The witness informed Corporal Casias that while he was looking for signs of wildlife on top of a mountain ridge in the area of TA-18, he noticed a male subject in a brown shirt throwing numerous items over the guard rail off the roadway that leads up to TA-18. The witness said his suspicions grew as there had been numerous thefts taking place at TA-54. Therefore he decided to drive toward the area where he saw the male subject throwing the unknown items. The witness further disclosed to Corporal Casias that he noticed what he thought was a blue Honda with a male subject wearing a brown shirt driving the vehicle. The witness said he turned around and was able to see a license plate bearing NM/ MYY 937.

19. After Corporal Casias spoke to the witness, he reviewed the items which were found at the crime scene. One contaminated item located at the crime scene was a pair of gloves with the initials WS on the front in black marker. It was later confirmed that only one employee with the initials WS works at TA-54. (That individual is referred to throughout this affidavit as WS)

20. On September 29, 2015, Corporal Casias interviewed WS who provided consent to Corporal Casias to search the trunk of his vehicle which was a blue 1998 Honda Accord with license plate NM/ MYY937. Corporal Casias observed that WS's trunk carpet was in the trunk.

21. Corporal Casias asked WS if he used gloves for any of his duties at TA-54. WS confirmed he uses gloves, then further stated he left his gloves in a Laboratory vehicle approximately one week prior. WS further explained when he returned back to work the following week, he noticed his gloves were missing. Corporal Casias asked WS if the gloves were marked in any way that identified them as belonging to him. WS said he puts his initials, WS, on his gloves.

22. While Corporal Casias was speaking with WS, he observed that he was not wearing a brown colored shirt. During Corporal Casias's interaction with

WS, he was informed that an individual wearing a brown shirt was being surveyed by the RCT for contamination. The individual was later identified as ATENCIO. The RCT survey of ATENCIO was negative for contamination.

23. On September 29, 2015, Corporal Casias interviewed ATENCIO who he observed wearing a brown shirt. Corporal Casias asked ATENCIO what type of vehicle he drove, which ATENCIO stated was a 1998 silver Honda Accord. Corporal Casias asked ATENCIO for consent to search the trunk area of his vehicle. ATENCIO voluntarily gave Corporal Casias consent to search the trunk of his silver Honda. Corporal Casias observed that the trunk did not contain the carpet used to cover the spare tire and that the carpet found at the crime scene was a similar color to the carpet in ATENCIO's trunk.

24. On September 29, 2015, Sergeant (Sgt.) James Rodriguez of the LAPD conducted an interview with ATENCIO. During this interview ATENCIO was asked about his vehicle's missing trunk carpet, ATENCIO stated it was missing from his vehicle when he purchased it. He was then asked where he bought the car and he stated that he bought it from some guy. Sgt. Rodriguez asked him to provide the name of the person who sold him the vehicle. ATENCIO stated that he did not remember, but that he had the information in his vehicle. ATENCIO later informed Sgt. Rodriguez that he did not have the information related to who he purchased the vehicle from. At this point, LAPD impounded the vehicle to await issuance of a search warrant for further forensic analysis.

25. On October 1, 2015, Sgt. Rodriguez conducted an interview with the witness discussed earlier in this affidavit. The witness provided much of the same information he earlier provided to Corporal Casias. However, the witness clarified further details regarding the vehicle driven by the male wearing the brown shirt. The witness stated in an attempt to positively identify the male in question, he drove into the TA-54 parking lot for a closer look. The witness informed Sgt. Rodriguez he saw the male in a brown shirt [*guy that he earlier saw by the road, now*] standing near a blue Honda Accord, which at the time the witness thought was owned by the male in the brown shirt. It was later identified that the blue Honda was actually owned by WS. The witness explained this was the reason why he originally provided the license plate for WS's vehicle.

26. On October 5, 2015, the LAPD obtained a search warrant issued by the State of New Mexico signed by a District judge for ATENCIO's vehicle. Execution of the search warrant revealed that the [*color of the*] carpet found at the crime

scene matched [OTHER CARPET IN] ATENCIO's vehicle. LAPD discovered that an oil like stain on the carpet found at the crime scene was similar in shape, size, color and location as a stain inside the trunk of ATENCIO's vehicle. LAPD also discovered some white crumbs/residue on the top of the trunk cover near its lower left corner. [*] ~~This white material was also located inside the trunk of ATENCIO's vehicle in the same location as the carpet.~~

27. On October 7, 2015, the LAPD requested the Laboratory's Radiological Assistance Program (RAP) Team to survey the interior and exterior of ATENCIO's vehicle for radiological contamination. The RAP Team survey revealed that Alpha contamination existed on the steering wheel, gear shift and passenger door of ATENCIO's vehicle which registered between 600 and 1,000 disintegrations per minute (DPM). According RAP Team members, DPM is the amount of energy emitted from a contaminated area. The Department release limit standard is 20 DPM. The band saw found at the crime scene registered approximately 100,000 DPM.

28. Because the Department's release limit standard is 20 DPM, any contamination over this standard must be identified and contained. Since the band saw contamination registered at over 100,000 DPM, which may pose a serious health risk, and because probable cause exists that ATENCIO transported contaminated items from TA-54 to his premises, there is probable cause to believe his residence has contamination over 20 DPM. Any contamination would be evidence of a violation of 18 USC 641.

29. Pending further testing, the RAP Team stated the Alpha contamination located in ATENCIO's vehicle could be consistent with the alpha emitting isotope which was found on the band saw, the gloves with the initials WS, and the bag which the band saw was lying on. (Note: According to RAP team there are only a limited number of alpha emitters that exist.) Due to the fact that ATENCIO's hands did not test positive for contamination as described above, there is probable cause to believe he was wearing gloves while offloading the contaminated items from the trunk of his vehicle. This is supported by the fact there was contamination found on the steering wheel of ATENCIO's vehicle which is similar to the contamination found on a pair of gloves at the crime scene.

30. According to RAP Team members, cross-contamination occurs when a contaminated surface such as hands, gloves, or tools, come in contact with any other object. With regards to ATENCIO, it is probable that the contamination found on the steering wheel of his vehicle was transferred to his hands after he was tested, though he was interviewed at the LAPD,

[*] LAPD PLACED THE CARPET FOUND AT THE SCENE INSIDE THE TRUNK OF ATENCIO'S VEHICLE. LAPD NOTICED THAT THE WHITE MATERIAL ON THE CARPET FOUND AT THE SCENE MATCHED UP WITH WHITE RESIDUE INSIDE THE TRUNK. FURTHER ANALYSIS DETERMINED THAT THE OIL LIKE STAIN ON THE CARPET FOUND AT THE SCENE WAS EXACTLY ABOVE THE STAIN INSIDE THE TRUNK.

which has not been found to be contaminated. Thus, anything he touched from that point forward could be contaminated, i.e. home, personal vehicles, household effects, etc. Based on the types and levels of contamination found in vehicle and on the items recovered from TA-18, there is probable cause to believe that there is contamination in the premises.

31. Based on my knowledge, training, and experience in investigating theft of property from the Laboratory, individuals who take property from the Laboratory often transport it by vehicle to where they live, where they store it for some time in their homes, garages, or other buildings located on their property. To date, in FY 2015 there have been 76 reports of thefts of Laboratory property by Laboratory personnel. In the past two years, the LAPD has also had approximately 13 reported thefts from various areas of the Laboratory including TA-54.

## CONCLUSION

In view of the foregoing, I believe probable cause exists for the issuance of a search warrant for the premises identified in Attachment A, incorporated hereinto by reference of this affidavit and to search for items listed in Attachment B, incorporated hereinto by reference of this affidavit.

On October 7, 2015, Corporal Casias spoke to ATENCIO and he confirmed that he was currently living at County Road 120, House 113, Espanola, NM 87532. ATENCIO's wife is also believed to live at this residence. As part of the search authorized by this warrant, the FBI's Hazardous Evidence Response Team (HERT) will scan all of the items located at the premises to determine if they are contaminated. Because the volume of items is unknown prior to executing the warrant, the time needed to conduct the search is unknown. The search will begin in the daytime hours but due to the nature of the potential contamination, the search may continue into the nighttime hours.

Items seized will be considered evidence in the ongoing investigation of violations of Title 18, U.S.C, Section 641: Theft of Government Property.

10/08/2015
Date

Joseph R. Davila
Special Agent
United States Department of Energy
Office of Inspector General

SUBSCRIBED AND SWORN TO before me this 8th day of October, 2015.

_____
United States Magistrate Judge
Steven C. Yarbrough

**Attachment A**

The premises to be searched is the residence and outer building of Richard ATENCIO and possibly his wife. The residence is a multi-level light colored house with a greenish colored roof located at County Road 120, House 113, Espanola, NM 87532. The entrance to the property has what looks to be an electronic gate with the address 113 on the post of the entrance to the property. The outer building is a single story gray structure with two windows located in the front of the domicile. See attached photos incorporated herein by reference.